Filed 4/2/24  Vose v. Cadena CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LYDIA VOSE et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>MIKAELA CADENA et al.,<br><br>    Defendants and Appellants. | F084106<br><br>(Super. Ct. Nos. BPB-18-002681, BCV-18-101723)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Ralph W. Wyatt, Judge.

Darling & Wilson, Joshua G. Wilson and Nathan J. Oleson, for Defendant and Appellant Mikaela Cadena.

Dake, Braun & Monje, Craig N. Braun, for Defendant and Appellant Helen Wise.

LeBeau-Thelen, Andrew K. Sheffield, for Plaintiff and Respondent Lydia Vose.

Irene Castaneda, in pro. per., for Plaintiff and Respondent Irene Castaneda.

-ooOoo-

This is the second appeal in this probate matter. Upon remand from the initial appeal, the probate court, on its own motion, removed the trustee of the family trust underlying the instant litigation. The trustee (who was also the appellant in the prior appeal) appealed. We reject her contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.    Facts and Procedural History Reflected in this Court's Opinion in the Initial Appeal in this Matter**

We will replicate, with minimal modifications, the "Facts and Procedural History" section of our opinion in the prior appeal in this matter, as the facts and procedural history delineated there are relevant to this appeal as well. (See *Cadena v. Vose* (Jul. 28, 2021, F080428, F080183, F079863) [nonpub. opn.] (*Vose I*).)[1] *Vose I* specified that the background facts outlined in that opinion were "undisputed." (*Id.* at p. 2.)

This matter arose from a trust—the Andrew V. Negrete and the Ruth O. Negrete 1987 Trust—established in 1987 by a married couple, Andrew and Ruth Negrete. The trust's corpus consisted of the community property of Andrew and Ruth, mainly multiple rental homes and other real estate properties. The settlors, Andrew and Ruth, were also the initial trustees of the trust. The trust was amended and completely restated in January 2003, and amended a second time in April 2003 (collectively, the trust or the original trust). Ruth died in May 2003. After Ruth's death, Andrew became the sole trustee, in accordance with the provisions of the trust instrument. Andrew remained sole trustee of the trust until his death in December 2017.

---

[1] We take judicial notice of our prior unpublished opinion in *Vose I*, *supra*, F080428, F080183, F079863, and the underlying appellate records. (Evid. Code, § 452, subd. (d); see Cal. Rules of Court, rule 8.1115(b)(1) ["An unpublished opinion may be cited or relied on:  [¶] (1) When the court opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel."]; see *Wetherbee v. United States Ins. Co. of America* (1971) 18 Cal.App.3d 266, 269.)

Andrew and Ruth had four children together: Robert Negrete, Rudy Negrete, Helen Wise, and Lydia Vose. Ruth also had two other children from a previous marriage: Irene Castaneda and Antonio Torres. Antonio Torres died in or around 2012; he was survived by two children. Robert Negrete's son, Robert Angelo Negrete (Angelo Negrete), is also relevant in the context of the trust, as is Helen Wise's daughter, Mikaela Cadena (appellant in *Vose I* and in the instant appeal).

The trust instrument specified how the trust was to be administered following the death of a settlor. The trust instrument also specified a distribution plan for the trust's assets that would take effect following the deaths of both settlors. In addition, the trust instrument provided that upon the respective deaths of Andrew and Ruth, their daughters, Helen Wise and Lydia Vose, would become co-trustees, and if either Helen Wise or Lydia Vose was unavailable or unwilling to serve, then the other would become sole trustee. (Trust, Article XIII.)

The parties agree that following Ruth's death, during Andrew's tenure as sole trustee (2003 to 2017), Andrew did not administer the trust in accordance with the trust instrument. During Andrew's tenure as sole trustee, he also made, between 2010 and 2017, five unilateral amendments to the trust. The unilateral amendments, along with Andrew's failure to administer the trust as set forth in the original trust instrument, resulted in drastic changes to the distribution plan set forth in the original trust.

The original trust instrument named as beneficiaries the children of Andrew and Ruth, Ruth's children from her prior marriage, and Angelo Negrete, a grandson of Andrew and Ruth. (Trust, Article VIII.) Under the amendments unilaterally executed by Andrew after Ruth's death, the disposition plan set forth in the original trust instrument was radically altered as Mikaela Cadena, Helen Wise's daughter and the granddaughter of Andrew and Ruth, became the primary beneficiary of the trust's assets, to the detriment of the beneficiaries named in the original trust instrument. In addition,

3.

Andrew's unilateral amendments purported to override and change the designation, in the original trust instrument, of Helen Wise and Lydia Vose as successor trustees of the trust following the deaths of the settlors. Andrew's unilateral amendments named Mikaela Cadena as the successor trustee of the trust.

Upon Andrew's death, Cadena assumed the role of trustee. On March 5, 2018, Cadena served to interested parties, a " 'Notification by Trustee Pursuant to Probate Code [section] 16061.7,' " as required by that statute when a trust becomes irrevocable upon the death of a settlor. (Prob. Code, § 16061.7, subd. (a).) Cadena attached to the notice, documents reflecting the terms of the trust, including Andrew's unilateral amendments, and specified in the notice that she was the successor trustee of the trust. Cadena served the notice on Helen Wise, Lydia Vose, Irene Castaneda, Rudy Negrete, Robert Negrete, and the two children of Antonio Torres. Probate Code section 16061.8 specifies, in pertinent part, that persons served with a notice under Probate Code section 16061.7 by the trustee of a trust "may bring an action to contest the trust" *no later than* "120 days from the date" of service of the notice.

On July 2, 2018, within 120 days after service of Cadena's Probate Code section 16061.7 notice, Vose filed a petition for order (July 2, 2018 petition) in the Kern County Superior Court (case No. BPB-18-002681) challenging, inter alia, Andrew's unilateral amendments to the trust; the petition named Cadena and Wise as respondents. Castaneda subsequently joined Vose's petition. Thereafter, on July 16, 2018, Vose, in her capacity as trustee under the original trust instrument, filed a civil complaint against Cadena in the same court (case No. BCV-18-101723); the complaint stated a claim for declaratory relief and another claim for partition by sale of the trust's real property. The superior court partially granted a motion for judgment on the pleadings brought by Cadena in the civil matter (part of Vose's cause of action for declaratory relief survived Cadena's motion for judgment on the pleadings). Eventually, the two actions brought by Vose—the petition

4.

for order and the civil action—were "consolidated for all purposes under the Probate Case"; the consolidated case remains pending in a pretrial posture before the probate court. The parties have extensively litigated various matters arising from the pending case.

Meanwhile, Cadena distributed the real properties owned by the trust in accordance with the distribution plan effected by Andrew's unilateral amendments, that is, she distributed the real properties mainly to herself. Eventually, the probate court granted Vose's request for a preliminary injunction restricting Cadena's ability to dispose of trust assets pending resolution of the litigation involving the trust.

On January 3, 2019, while Vose and Castaneda's consolidated case was pending trial, Cadena filed a petition to enforce no contest clauses that were added to the original trust instrument by Andrew's unilateral amendments. Cadena sought by means of this "petition to enforce no contest clause" or disinheritance petition, to disinherit Vose and Castaneda with respect to the trust's assets, on account of the fact that they had challenged, by filing the July 2, 2018 petition and subsequent civil complaint, Andrew's unilateral amendments and changes to the distribution plan set forth in the original trust instrument. Wise joined Cadena's disinheritance petition.

On June 27, 2019, Vose filed, pursuant to California's anti-SLAPP statute,[2] a special motion to strike Cadena and Wise's disinheritance petition (anti-SLAPP motion); Castaneda joined Vose's anti-SLAPP motion. (See Code Civ. Proc., § 425.16 (anti-SLAPP statute).) A hearing on the anti-SLAPP motion took place on July 29, 2019, followed by a further hearing on July 31, 2019. On August 26, 2019, the trial court granted Vose and Castaneda's anti-SLAPP motion and struck Cadena and Wise's disinheritance petition. Cadena and Wise appealed (this was the initial appeal). We held

---

[2] " ' "SLAPP" is an acronym for "strategic lawsuit against public participation." ' " (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 785, fn. 1.)

the trial court properly granted Vose and Castaneda's anti-SLAPP motion and affirmed the trial court's judgment.

## II.    Probate Court Proceedings Upon Remand Following the Initial Appeal

Upon remand following our disposition of the initial appeal in this matter, on December 13, 2021, Vose brought an ex parte application (ex parte application) for (1) the suspension and removal of Mikaela Cadena as trustee of the trust; (2) the appointment of Vose as successor trustee; and (3) an order compelling the surrender of trust property to Vose as successor trustee.  The probate court heard argument from all parties on the ex parte application on December 23, 2021.  The probate court issued its ruling on January 4, 2022.  The court denied the ex parte application without prejudice, on grounds that a petition for removal of a trustee must be made upon regular notice pursuant to Probate Code section 17203.

The trial court, at the same time, gave notice of its own motion, under Probate Code sections 15642, subdivision (a) and 17206, to remove Cadena as trustee and scheduled a hearing on February 4, 2022.  The court noted, in this context:  "The Court requests briefing on (1) the scope and extent to which the unilateral amendments created by the surviving co-settlor, Andrew Negrete, are void; i.e., whether such unilateral amendments are wholly void or whether they are void only as to the Residual Trust assets, (2) the issue of whether to remove Mikaela Cadena as trustee of the Trust or as to the Residual Trust only, and (3) the appointment of a party as a successor trustee or appointment of a professional fiduciary as an interim trustee."  The court set a briefing schedule ahead of the hearing on the matter.

The parties thereafter briefed the question whether the court should remove Cadena with reference to the issues specified by the court.  A hearing on the trial court's sua sponte motion to remove Cadena as trustee was held on February 4, 2022.  The probate court issued its ruling on March 21, 2022.  The court removed Cadena as trustee

6.

of the trust and appointed Vose as successor trustee. Cadena was ordered to turn over, to the successor trustee, all the trust property, including all trustee files, personal property, and real property. Cadena and Wise filed the instant appeal challenging the trial court's ruling removing Cadena as trustee of the trust (Cadena and Wise are appellants; Vose and Castaneda are respondents).

## DISCUSSION

### I. Trial Court Properly Removed Cadena as Trustee

#### A. Applicable Legal Framework and Standard of Review

Removal of a trustee is governed by Probate Code section 15642, which expressly provides that a trustee "may be removed in accordance with the trust instrument *by the court on its own motion*." (Italics added.) Courts, recognizing that the statute means what it says, have noted that a probate court has "the express power to remove a trustee on its own motion, *without a petition*." (*Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427 (*Schwartz*).) The statute identifies several specific grounds for removal, including the trustee's breach of trust, failure to act, and excessive compensation, and the catch-all, "[f]or other good cause." (Prob. Code, § 15642, subd. (b)(1), (4), (5), (9). A trial court has broad discretion in determining whether to remove a trustee based on one of these statutory grounds. (See *Estate of Gilmaker* (1962) 57 Cal. 2d 627, 633 ["The removal and substitution of a trustee is largely within the discretion of the trial court."]; *Schwartz*, *supra*, 164 Cal.App.4th at p. 430.)

Moreover, a court's authority to remove a trustee derives not only from section 15642, but also from its broad equitable powers to supervise the administration of a trust. (*Schwartz*, *supra*, 164 Cal.App.4th at p. 427; *Getty v. Getty* (1988) 205 Cal.App.3d 134, 141-142 [the probate court has the authority to remove a trustee entirely in the exercise of its general equity jurisdiction].) A probate court has the responsibility "to protect the estate and ensure its assets are properly protected for the beneficiaries." (*Estate of*

7.

*Ferber* (1998) 66 Cal.App.4th 244, 253.)  Thus, the court has the inherent equitable power to "take remedial action" and to " 'intervene to prevent or rectify abuses of a trustee's powers.' " (*Schwartz*, *supra*, at p. 427.)

We review the trial court's decision to remove a trustee, for abuse of discretion, and the court's determination must be upheld unless " 'after calm and careful review of the entire record, it can fairly be said that no judge would reasonably make the same order under the same circumstances.' " (*In re Marriage of Berland* (1989) 215 Cal.App.3d 1257, 1261-1262.)  In reviewing the factual determinations underlying the trial court's exercise of its discretion, we apply the substantial evidence test.  (See *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1254.)

We review de novo arguments that the probate court did not apply the correct procedure and/or did not have the jurisdiction to remove a trustee.  (See *In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 592.)  Similarly, the de novo standard of review "applies to questions of statutory construction [citation] and to the interpretation of written instruments, including a trust instrument, unless the interpretation depends on the competence or credibility of extrinsic evidence or a conflict in that evidence." (*Pena v. Day* (2019) 39 Cal.App.5th 546, 551, overruled on other grounds by *Haggerty v. Thornton* (2024) 15 Cal.5th 729, 735 (*Haggerty*); *Burch v. George* (1994) 7 Cal.4th 246, 254.)  Where, as here, we do not rely on conflicting extrinsic evidence, the interpretation of a trust agreement is a legal question we review de novo.  (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439.)

**B.**   ***Original Trust Instrument and Andrew's Unilateral Amendments***[3]

As noted, Ruth and Andrew established the trust in 1987. Ruth and Andrew jointly amended the trust twice, in January 2003 and April 2003, ahead of Ruth's death in May 2003. The first amendment completely amended and restated the trust, and the second amendment amended and restated Article VIII (discussed below). As mentioned, we will refer to the trust and the first two amendments collectively as the trust or original trust.

The trust specifies that Ruth and Andrew had "accumulated significant amounts of property during their marriage," hence their desire to create an inter vivos trust. (Trust, Preamble.) A list ("Schedule 'A' ") attached to the trust described all the real and personal property placed in the trust; the document specifies that all the listed property consisted of the community property of Ruth and Andrew. (Trust: Declaration of Trust & Schedule 'A'.) (Indeed, there is no dispute between the parties that the trust consists of the community property of Ruth and Andrew.) The trust further states that "[a]ny community property transferred to the trust shall remain community property after its transfer." (Trust, Article I.) The trust refers to the property subject to the trust instrument as the "trust estate" and specifies that the trust estate "shall be held, administered and distributed in accordance with the [trust] instrument." (Trust, Article I.)

Ruth and Andrew were designated as the initial trustees of the trust. The trust further provides that should one of the settlors be unable to act as trustee, then the other one would act as sole trustee. The trust also names Helen Wise and Lydia Vose as successor trustees, once both Ruth and Andrew were unable to act as trustees; the trust clarifies that if either Wise or Vose is unable to act as a trustee, then the other one would

---

[3] This section of the opinion is drawn, with minimal modification, from our prior unpublished opinion in this matter, *Vose I*, *supra*, F080428, F080183, F079863 at pp. 10-17.

act as sole trustee. (Trust: Declaration of Trust & Article XIII.) During the joint lifetime of the settlors, the net income from the trust estate was to be paid to the settlors; the principal of the trust estate could also be tapped, at the trustees' discretion, for the settlors' "proper health, education, support, maintenance, comfort and welfare." (Trust, Article II (A).)

The trust provides specific instructions for the administration of the trust upon the death of either settlor. Under the terms of the trust, on the death of any one of the settlors, the surviving settlor and trustee was required to allocate the existing trust estate "into three (3) separate [sub-]trusts, designated 'Survivor's Trust' and the 'Residual Credit Shelter Trust' and the 'Residual Marital Trust.' " (Trust, Article III (A).) The Survivor's Trust was to be funded with the "Surviving Spouse's interest in the Settlors' community property" held by the trust. (Trust, Article III (B).) The Residual Marital Trust was to be funded with "a pecuniary amount"—calculated with reference to a specified formula—to be drawn from the deceased spouse's interest in the community property held by the Trust. (Trust, Article III (C).) The Residual Credit Shelter Trust was to consist of the balance of the deceased spouse's interest in the community estate held by the trust. (Trust, Article III (D).)

Thus, upon Ruth's death, Andrew's interest (50 percent) in the community property comprising the trust estate was to be allocated to the Survivor's Trust and Ruth's interest (50 percent) in the same was to be allocated to the Residual Trusts. In other words, all three sub-trusts were to be funded *with the community property held by the trust*, with one half of the community estate in the trust allocated to the Survivor's Trust and the other half of the community estate in the trust allocated to the Residual Trusts. The trust provides that "physical" division of specific trust assets was not required; rather the trustee was required to "keep separate accounts for the different undivided interests." (Trust, Article XI (D).) The trust provides that after the death of one spouse, the net

10.

income from the Survivor's Trust and the Residual Marital Trust would be paid to the surviving spouse, plus any net income from the Credit Shelter Trust that the trustee deemed appropriate. The trust further permitted the trustee to invade the principal of the Residual Trusts for specified, limited purposes, that is the surviving spouse's "proper health, support, maintenance, and education." (Trust, Article V (A).)

Article VII of the trust provides: "On the Surviving Spouse's death, the Trustees shall add to the Residual Credit Shelter Trust any portion of the Survivor's Trust, if any, not effectively disposed of as hereinabove provided[4] and shall add to the Residual Credit Shelter Trust the remaining balance, if any of the Residual Marital Trust, to [be] follow[ed] [by] the disposition of the Residual Credit Shelter Trust in all respects as herein provided."

Article VIII, as revised and restated by the second amendment executed by Ruth and Andrew, then provided for distributions from the Residual Credit Shelter Trust to several family members. Specifically, Article VIII provided, in pertinent part: "After the death of the Surviving Spouse, the Trustees shall distribute, free of trust, to Robert Angelo Negrete, by right of representation, all of the trust's right[s], title, and interest in that certain real property known as 809 Golden State, Bakersfield, California." (Trust, Article VIII (A), unnecessary capitalization omitted.) Article VIII further provided, in pertinent part: "After the death of the Surviving Spouse, the Trustees shall distribute the remaining trust estate to Rudy Negrete, by right of representation, Robert Andrew Negrete, by right of representation, Lydia Vose, by right of representation, Helen Wise, by right of representation, Irene Castaneda, by right of representation, and Antonio

---

[4] Article VI of the trust provided for the assets of the Survivor's Trust to be used, inter alia, to defray "payment of debts, expenses of last illness, funeral expenses, administration expenses and other costs incurred for the Surviving Spouse's support."

Torres, by right of representation." (Trust, Article VIII (B), unnecessary capitalization omitted.)

Article IX of the trust addresses issues of revocation and amendment of the trust. As to revocation, Article IX, paragraph (A) specifies, in pertinent part: "During the joint lifetimes of the Settlors, this trust may be revoked in whole or in part with respect to community property by an instrument in writing signed by either Settlor and delivered to the Trustees and the other Settlor." (Trust, Article IX (A).) As to amendment of the trust, Article IX, paragraph (C) specifies, in pertinent part: "The Settlors may at any time during their joint lifetimes amend any of the terms of this instrument by an instrument in writing signed by both Settlors and delivered to the Trustees." (Trust, Article IX (C).)

Article IX, paragraph (B) addresses revocation and amendment of the sub-trusts: "On the death of the Deceased Spouse, the Surviving Spouse shall have the power to amend, revoke, or terminate the Survivor's Trust but the Residual Trust may not be amended, revoked or terminated. On revocation or termination of the Survivor's Trust, all of the assets shall be delivered to the Surviving Spouse. On the death of the Surviving Spouse, neither trust may be amended revoked or terminated." Article IX, paragraph (B) does not delineate a method for revoking or amending the Survivor's Trust. Rather, it provides: "Revocation and amendment shall be made in the manner provided in paragraphs A and C of this Article IX." (Trust, Article IX (B).) In addition, Article IX specifies that "[t]he powers of the Settlors to revoke or amend this instrument are personal to them and shall not be exercisable on their behalf by [other persons]." (Trust, Article IX (D).)

The trust also contained a no contest clause in Article XVI that provided, in part: "The Settlors and each of them have purposely made no provision for any other person … whether claiming to be an heir of Settlors or not, and if any person, whether beneficiary under this Trust or not mentioned herein, shall contest this Trust or object to

12.

any of the provisions hereof, the Settlors and each of them give to such person so contesting or objecting the sum of One Dollar ($1.00), and no more, in lieu of the provisions which they have made or which they might have made herein for such person so contesting or objecting."

The parties agree that after Ruth's death, Andrew failed to administer the trust in accordance with the trust instrument. More specifically, he failed to formally create and fund the sub-trusts by allocating the trust's assets to separate accounts for each sub-trust. (See Trust, Article XI (D).) In addition, between 2010 and 2017, Andrew executed five unilateral amendments (the Third through Seventh Amendments) that purported to: (1) amend the disposition plan for the trust estate as a whole, set forth in Article VIII, as restated in the Second Amendment (executed by both Ruth and Andrew, prior to Ruth's death in 2003); (2) change the designation of the successor trustees for the trust as a whole, as set forth in Article XIII; and (3) amend and supersede the no contest clause set forth in Article XVI.

First, on October 19, 2010, Andrew unilaterally added the Third Amendment to the trust. The Third Amendment "deleted and superseded in total" Article VIII of the trust and replaced the distribution plan stated therein with a completely different distribution plan as to all the trust's assets. Under the Third Amendment, upon Andrew's death, the property located at 809 Golden State, Bakersfield, California, (809 Golden State) was to be distributed to Robert Negrete rather than Angelo Negrete. The Third Amendment also provided that specific properties would be distributed to Helen Wise, Robert Negrete, Rudy Negrete, Irene Castaneda, Lydia Vose, and Antonio Torres (with right of representation in each case). The Third Amendment further provided that any remaining trust assets would be distributed among Rudy Negrete, Robert Negrete, Lydia Vose, Helen Wise, Irene Castaneda, and Antonio Torres (with right of representation in each case).

13.

In addition to completely revising the distribution plan in Article VIII of the trust, the Third Amendment purportedly "deleted and superseded in total" Article XVI of the trust, which article set forth the original no contest clause. Article XVI, as purportedly amended by the Third Amendment, provided:

> " 'Except as otherwise provided, the Settlor has intentionally and with full knowledge omitted providing for any of his heirs who may be living at the time of the Settlor's death. Settlor has purposely made no provision for any such person, whether claiming to be an heir or not, and if any person … whether beneficiary under the Trust or not mentioned herein shall contest this Trust or the Settlor's Will, directly or indirectly, or make any claim against this trust or the Settlor's estate, directly or indirectly, including, but not limited to, a claim that the Settlor Andrew Negrete improperly amended the trust as to any property owned by the trust, including the part formerly owned by the Ruth O. Negrete [*sic*], a claim of ownership of any asset of the trust or of the Settlor, or a probate homestead, or a family allowance, or a claim that the property should not remain in trust, or a claim that the Settlor had an agreement with any beneficiary herein regarding the ownership of any property or the disposition of any property, or interferes in any manner, directly or indirectly, with the funeral arrangements that the Settlor makes regarding the disposition of his remains, Settlor directs the Trustee herein to give said person the sum of One Dollar ($1.00) and no more in lieu of the provisions which Settlor has made or which he might have made herein for such person so contesting or objecting or claiming.' " (Unnecessary capitalization omitted.)

Next, on July 2, 2013, Andrew unilaterally added the Fourth Amendment to the trust. The Fourth Amendment purported to delete and supersede "in total" "Article VIII of the original instrument and all subsequent amendments," and to replace them with a new distribution plan for all the trust's assets. Under the Fourth Amendment, upon Andrew's death, 809 Golden State and another property were to be distributed to Robert Negrete, subject to the condition that the latter "pay the sum of twenty-five thousand dollar ($25,000) to the trust, which shall be distributed pursuant to the residue." The Fourth Amendment also provided that specific properties would be distributed to Helen Wise, Robert Negrete, Rudy Negrete, Irene Castaneda and Lydia Vose (with right of

14.

representation in each case); Antonio Torres and his heirs were removed as beneficiaries (Antonio had died in 2012). The Fourth Amendment further provided that any remaining trust assets would be distributed among Rudy Negrete, Robert Negrete, Lydia Vose and Helen Wise (with right of representation in each case). Irene Castaneda and Antonio Torres (or his heirs) were no longer residuary beneficiaries. Antonio Torres or his heirs were to receive nothing at all.

In addition to again revising the distribution plan in Article VIII of the trust, the Fourth Amendment purportedly "deleted and superseded in total" Article XVI of the trust, which Article set forth the no contest clause previously added by Andrew's unilateral Third Amendment. The Fourth Amendment added a no contest clause that was identical to the no contest clause in the Third Amendment (see above).

On September 15, 2014, Andrew unilaterally added the Fifth Amendment to the trust. The Fifth Amendment purported, once again, to delete and supersede Article VIII of the trust and subsequent amendments and replace them with yet another distribution plan regarding all the trust's assets. Under the Fifth Amendment, upon Andrew's death, various properties were to be distributed to Robert Negrete, Helen Wise, Rudy Negrete, Irene Castaneda, and Lydia Vose. Any remaining trust estate was to be distributed to Robert Negrete, Rudy Negrete, Helen Wise and Lydia Vose.

The Fifth Amendment also "deleted and superseded in total" "Article XIII, Paragraph A of the original instrument," which article named the successor trustees of the trust. Whereas the original trust instrument named Helen Wise and Lydia Vose as successor trustees following the deaths of the settlors, the Fifth Amendment named Helen Wise as the sole successor trustee and further provided that should Helen Wise be unable to act as trustee, Mikaela Cadena would be the sole successor trustee.

On July 8, 2016, Andrew unilaterally added the Sixth Amendment to the trust. The Sixth Amendment provided: "Article VIII of the original instrument and all

15.

subsequent amendments related to the trust [are] deleted and superseded in total." Under the Sixth Amendment, Article VIII set forth another entirely new distribution plan for the entirety of the trust's assets, to be effectuated on Andrew's death. Specifically, 809 Golden State and another parcel were to be distributed to Robert Negrete on the condition that he paid $25,000 to the trust to be distributed as part of the trust "residue." In addition, one parcel of real property was to be distributed to Helen Wise and another to Rudy Negrete. The remaining 16 parcels of real property held by the trust were to be distributed to Mikaela Cadena. Finally, any residue left in the trust estate was to be distributed to Rudy Negrete, Robert Negrete, Lydia Vose, and Helen Wise. Irene Castaneda and Antonio Torres—Ruth's children from a prior marriage—were to receive nothing at all.

On May 25, 2017, Andrew unilaterally added the Seventh Amendment to the trust. The Seventh Amendment purported to delete and supersede "in total" "Article XIII of the original [trust] instrument and all subsequent amendments" that named the successor trustee(s) for the trust. The Seventh Amendment provided, in pertinent part: "If Andrew V. Negrete shall for any reason cease to act as a Trustee, Mikaela Cadena shall act as sole Trustee. If Mikaela Cadena shall for any reason cease to act as a Trustee, Helen Wise shall act as sole Trustee." (Unnecessary capitalization omitted.)

### (C) Declaration of Larry Cox, Trust Attorney to Andrew and Ruth Negrete

As noted in our opinion in *Vose I*, Cadena had filed with the probate court a declaration, along with exhibits, from Andrew and Ruth Negrete's trust attorney, Larry Cox, who drafted the original trust as well as Andrew's unilateral amendments. Cadena filed the declaration from Cox in the litigation concerning the preliminary injunction issued by probate court with regard to the trust's assets (Cox's declaration was filed on May 28, 2019, in case No. BPD-18-002681). (See *Vose I*, *supra*, F080428, F080183, F079863 at pp. 24-25, 33.) *Vose I* describes Cox's declaration:

16.

" 'Cox's declaration stated that in October 2010, Andrew informed him that "he desired to amend the Trust to specifically devise his and Ruth's real properties to some of their children, with each identified child [to] receive various properties outright and free of the Trust.' Cox further stated: 'I informed Andrew … that his suggested disposition was not permissible under the terms of the Trust following Ruth's passing, because her desires as to what was to be done with her interest in the Trust were now irrevocable.' Cox added: 'Andrew advised me that he wanted to proceed with his … idea of simply amending the Trust.' Cox continued: 'I suggested to Andrew that if he was committed to amending the Trust, that we should consider adding a stronger disinheritance clause in an effort to dissuade his children from contesting his amendment. Andrew agreed. In short, the intent of the no contest clause was to disinherit any contestant that later claimed Andrew inappropriately amended the Trust.' Cox's declaration stated that Andrew thereafter made the other unilateral amendments to the trust, including the Fourth Amendment, with Cox again reminding 'Andrew that Ruth's instructions as to her share of the Trust assets became irrevocable following her death,' but Andrew chose to proceed with the amendments anyway….

"Attached to Cox's declaration were letters he had written to Andrew at the time Andrew opted to make various unilateral amendments. In the letters, Cox memorialized his warning to Andrew that the unilateral amendments purported to affect not just Andrew's share of the trust's assets but also Ruth's share, despite the fact that upon Ruth's 'passing in 2003,' her 'portion of this trust became unchangeable.' Cox also wrote: 'I will prepare a new disinheritance clause for your review and consideration. I will write it in a much stronger fashion. Hopefully, this will eliminate the possibility of a contest.' " (*Vose I*, *supra*, F080428, F080183, F079863 at pp. 25-26.)

### (D)     *Probate Court's Ruling Removing Cadena as Trustee*

As noted above, the probate court gave notice of its sua sponte motion to remove Cadena as trustee, provided the parties an opportunity to brief the salient issues, and held a hearing at which it heard argument from all parties. The court thereafter issued written findings, rulings, and orders; the court provided a detailed explanation for its determinations. In its written ruling, the probate court outlined the extensive briefing, including supporting exhibits and declarations, that it reviewed in making its determinations. Among the documents considered by the court were all the briefs and

17.

declarations filed by the parties in relation to Vose's ex parte application to remove trustee as well as all the briefs, exhibits, and declarations filed by the parties in relation to the court's sua sponte motion to remove Cadena as trustee.  In the end, Cadena was removed as trustee and Vose was appointed successor trustee.

(i)     Sufficient Notice

In its ruling, the probate court addressed Cadena's argument that the trial court's sua sponte motion to remove her as trustee "was improperly noticed in that it failed to state the grounds for removal."  The court first framed Cadena's contentions as follows: "In essence, Cadena is arguing the Court lacks jurisdiction to act in [a] particular manner, or to act without the occurrence of certain procedural prerequisites.  See, *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288; in accord, *Law Offices of Stanley J. Bell v. Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011, 1022 ('*Bell*').  The question being presented by Cadena is whether the Court having fundamental subject matter jurisdiction, acted in excess thereof in making a determination on its own motion without complying with the requirements of a noticed motion under CCP § 1005 and CRC Rules 3.1110, 3.1112."  The court then rejected Cadena's argument:

> "There is no question that the Court has the authority to remove a trustee on its own motion, without a petition.  Probate Code § 15642(a) [other citations].  More importantly, the probate court has the inherent power to decide all incidental issues necessary to carry out its express powers to supervise the administration of a trust.  See, *Estate of Heggstad* (1993) 16 Cal.App.4th 943, 951.  Further, this inherent power of the probate court has long been recognized to include the power to take remedial action to prevent or rectify abuses of a trustee's powers.  *Edwards v. Edwards* (1998) 61 Cal.App.4th 599, 604.

> "In this case, Cadena had notice of Lydia Vose's petition for removal based on enumerated acts which provided Cadena with notice of the precise issues before the Court, including her [potential] suspension.  Although full notice of the hearing on such petition was not sufficient to be heard on an ex parte basis, sufficient time for the court hearing set for 2/4/2022 has been provided.  In addition to the foregoing, Cadena herself

18.

filed her petition on her first account and report, which sought the approval of her acts as trustee, placing such actions as trustee before the Court, subjecting the trustee to removal or suspension. See *Schwartz v. Labow* (2008) 164 Cal.App.4th 417.

"Under these circumstances Cadena and Helen Wise ('Wise') had sufficient notice of the issues being presented by the Court's motion for removal to satisfy due process requirements and the Court has the authority to proceed with the determination of these issues on its own motion."

(ii)     Validity of Andrew Negrete's Unilateral Amendments

Andrew's unilateral amendments to the trust as a whole amended, inter alia, the trust's original no contest clause, named Cadena as trustee of the entire trust, and basically left the entire trust estate to Cadena. In its ruling, the probate court addressed Cadena's argument that "the unilateral amendments are valid instruments in that they purportedly amended Andrew Negrete's ('Andrew') share of interest in the Trust estate." The court initially addressed Cadena's preliminary arguments in this context, before turning to the issue of the validity of Andrew Negrete's unilateral amendments:

"Cadena first argues that Ruth Negrete's ('Ruth') community property interest terminated when Ruth died, pursuant to Probate Code § 100. However, this interpretation ignores the fact the settlors had executed a revocable living trust prior to Ruth's death and all of the settlors' community property estate was transferred [to] the Trust.

"Probate Code § 104 states that '[n]otwithstanding Section 100, community property held in a revocable trust described in Section 761 of the Family Code is governed by the provisions, if any, of the trust for disposition in the event of death' Under Family Code § 761, the trustee of a trust may convey and otherwise manage and control the trust property in accordance with the provisions of the trust without the joinder or consent of either spouse unless expressly required under the terms of the trust. Further, Probate Code § 104.5 states the transfer of community property to a revocable trust shall be presumed to be an agreement, pursuant to Section 100, that those assets retain their character in the aggregate for purposes of any division provided by the trust.

"Thus, the terms of the Trust govern the Trust estate and the administration of the Trust estate property as well as its distribution."

19.

The probate court then turned to the question of the validity of the far-reaching amendments unilaterally executed by Andrew. The court stated:

> "Cadena argues that Andrew revoked the Trust after Ruth's death and that pursuant to the holding in the case of *In re Estate of Powell* (2000) 83 Cal.App.4th 1434 ('*Powell*'), Andrew's unilateral amendments were valid as to Andrew's portion of the Trust estate (i.e., Andrew's community property intertest).

> "However, the *Powell* case involved a surviving settlor's express written revocation of a trust following the death of the co-settlor spouse. The trust instrument in *Powell* expressly authorized the revocation of the trust 'at any time during the lifetime of either Trustor.' Myrtle, the deceased spouse in *Powell*, died on July 26, 1995. Almost a year after her death, William, the surviving spouse in *Powell*, executed a notice of revocation of the trust. *Powell*, *supra*, at 1438. The fact of revocation was not an issue in the *Powell* case, only the effect of revocation was at issue. *Id*. fn. 3.

> "Contrast the revocation issue considered in *Powell*, to the instant case which involves Andrew's unilateral amendments to the whole Trust, not his revocation thereof. Under the express terms of [the] Trust in the present case, upon the death of a co-settlor, the surviving settlor could only revoke or amend the surviving spouse's 'Survivor's Trust.' In this instance, Andrew did not create any Survivor's Trust. The appellate court found [in the initial appeal in this matter] that Andrew attempted to amend the 'entire trust' and changed the disposition of … 'all the trust's assets.' (*Cadena v. Vose* (Cal. Ct. App., July 28, 2021, No. F080428) 2021 WL 3185766, at 17, as modified (Aug. 2, 2021).

> "As to amendments to the Trust [as a whole], such amendments had to be in writing, signed by both settlors."

After disposing of Cadena's arguments, the probate court further analyzed the issue:

> "In *King v. Lynch* (2012) 204 Cal.App.4th 1186, 1194,[5] the court held that when a trust specifies a method for modification, that trust can only be modified in that manner. In the present case, the right to amend the

---

[5] *King v. Lynch*, *supra*, 204 Cal.App.4th 1186 was overruled by *Haggerty*, *supra*, 15 Cal.5th at page 735.

20.

Trust [as a whole] could only be exercised by a writing signed by both of the settlors. See Article IX of the Trust instrument. As discussed in the case of *King v. Lynch*, '[t]he trust specified a modification method and thus, under [Probate Code] section 15402 the trust could only be amended in that manner.' *King v. Lynch*, at 1194.

"The recent case of *Balistreri v. Balistreri* (Feb. 24, 2022, No. A16222) --- Cal.App.5th --- [2022 WL 557745],[6] held that while Probate Code § 15401 governs methods for trust revocation, Section 15402 rules trust modification. Section 15402 states that a trust is revocable and the settler may modify the trust by the revocation procedures **unless the trust itself provides otherwise**. If the trust provides a method to be used for modification, then that method must be followed. Using any method other than that specified by the trust would invalidate the amendment. The *Balistreri* court found that this was 'the most straightforward reading' of Probate Code § 15402's '**unless the trust instrument provides otherwise**' language.

"Because the Trust in this case specified a method for amending the Trust [as a whole] and that method was not followed, the amendments were and are invalid.

"Andrew himself knew that the unilateral amendments were not permissible under the terms of the Trust prior to executing the unilateral amendments as he was so advised by counsel. See declaration of Larry Cox filed May 28, 2019 in support of Cadena's opposition to Lydia Vose's preliminary injunction.

"Under the express terms of the Trust, Cadena never should have assumed [the] position [of trustee] and must be removed for other good cause (Probate Code, § 15642(b)(9)) in favor of the successor trustee designated in the Trust instrument."

    (iii)    <u>Cadena's Conflict of Interest with Regard to the Trust Estate</u>

The probate court also determined, in its ruling, that it was necessary to remove Cadena as trustee of the trust for another independent reason, namely, because she had a conflict of interest with regard to the trust estate. Specifically, the court stated:

---

[6] *Balistreri v. Balistreri*, *supra*, --- Cal.App.5th --- [2022 WL 557745], was overruled by *Haggerty*, *supra*, 15 Cal.5th at page 735.

21.

"Cadena has admitted the unilateral amendments were in breach of Andrew's fiduciary duties as trustee in violation of Probate Code §§ 16000, 16002, 16003, 16004, 16006 and 16009.  Yet Cadena took control and ownership of Ruth's entire portion of the Trust estate.  This was contrary to the distribution under the terms of the Trust.  Therefore, Cadena's title to the community property and proceeds from sales of community property conflicts with the interests of other beneficiaries of the Trust.  This is true whether or not the unilateral amendments are void in their entirety.

"This conflict of interest also constitutes separate and distinct grounds for Cadena's removal as trustee of the Trust at this time.  Probate Code § 15642(b)(9).  Removal is appropriate when the trustee has appropriated trust property to the trustee's own use, whether or not the trustee purported to act honestly under the assumption that the trustee would be entitled to the trust property when [the] contrary proved to be fact. *Moore v. Bowes* (1937) 8 Cal.2d 162, 165 ['The purpose of removal of trustees is not the infliction of a penalty for past behavior, but is the preservation of the trust property.']; [additional citations]; see also *Getty v. Getty* (1988) 205 Cal.App.3rd 134, 139."

### (iv)    Appointment of a Successor Trustee

The court next addressed, in its ruling, the question of appointing an appropriate successor trustee.  The court noted:  "Pursuant to the terms of the Trust, Lydia Vose ("Vose") and Helen Wise were nominated as successor co-trustees.  See the Trust Instrument at Article XIII, Section A."

The court determined that Helen Wise was not an appropriate co-trustee for the following reasons.  First, "Helen Wise ('Wise') previously declined to accept the role as the nominated co-trustee when invited to do so by counsel's letter of June 28, 2018."  Second, "Wise was also served with a notice pursuant to Probate Code section 16061.7 and failed to object to Lydia Vose ('Vose') acting as trustee."  Third, "Wise confirmed her understanding that Vose was the trustee by her petition asserting that Vose had breached her duties as trustee filed in April, 2019."  Fourth, "Wise has consistently supported Cadena's appointment pursuant to Andrew's unilateral amendments to the Trust and also supported Cadena taking control and ownership of the Trust property, including Ruth's community property share of the Trust estate.  See appellate court's

22.

holding on the appeals filed in this case, *Cadena vs. Vose* (Cal. Ct. App., July 28, 2021, No. F080183) 2021 WL 3186242, at page 18." The court concluded: "Based on the foregoing, Wise is not an appropriate successor trustee (or co-trustee) of the Trust."

Furthermore, the court determined: "Vose is the successor trustee nominated under the terms of the Trust. The status of the Trust estate at this point leaves insufficient funds to afford a professional trustee appointment. [¶] Based on the foregoing, Lydia Vose would be an appropriate appointment as successor trustee."

(v)     The Probate Court's "Findings, Rulings, and Orders"

The Probate court summarized its findings, rulings, and orders as follows:

"1.     Notice has been provided in the manner required by law.

"2.     Andrew Negrete did not effectuate the revocation of the Trust in the present case and the holding in the *Powell* case is not applicable to the facts of this case.

"3.     The Trust instrument in this case provides for the amendment of the Trust [as a whole] by the joint signatures of the co-settlors and the holdings in *King v. Lynch* and *Balistreri v. Balistreri* apply to the facts of this case.

"4.     Andrew Negrete failed to create a survivor's trust and a residual trust.

"5.     The unilateral amendments 3-7 are invalid in their entirety and Mikaela Cadena taking the position as successor trustee was and is contrary to the terms of the Trust, and other good cause exists for the removal of Trustee Mikaela Cadena.

"6.     Even if the unilateral amendments were determined to be valid as to a portion of the Trust estate, Mikaela Cadena now has a conflict of interest based on her taking ownership of the Trust property, including that portion which represented Ruth's share of the Trust estate.

"7.     Mikaela Cadena is removed as trustee of the Trust and Lydia Vose is the appropriate choice of successor trustee and is so appointed and vested with all the powers vested in the office of the trustee under the Trust instrument and trust law.

23.

"8.     The Court orders Mikaela Cadena and her representatives to, on or before April 1, 2022, turn over to Lydia Vose, as trustee of the Andrew V. Negrete and Ruth O. Negrete 1987 Trust, as amended and restated, all trust property, including but not limited to all trustee files, all personal property and all real property of the trust, in their possession, custody or control."

*(E)     Analysis*

Cadena and Wise challenge, on multiple grounds, the trial court's ruling removing Cadena as trustee of the trust. We detect no merit in their contentions and affirm the judgment.

### (i)     Cadena had Adequate Notice

Cadena and Wise contend that, while the trial court could remove Cadena as trustee on its own motion pursuant to Probate Code section 15642, the trial court was required to provide a notice of motion in the same manner as a party making a motion in a civil case is required to give notice thereof pursuant to Code of Civil Procedure sections 1003 through 1020. Specifically, Cadena and Wise argue the probate court was required to comply with Code of Civil Procedure section 1010, which provides, in pertinent part: "Notices must be in writing, and the notice of a motion, other than for a new trial, must state when, and the grounds upon which it will be made, and the papers, if any, upon which it is to be based. If any such paper has not previously been served upon the party to be notified and was not filed by him, a copy of such paper must accompany the notice. Notices and other papers may be served upon the party or attorney in the manner prescribed in this chapter, when not otherwise provided by this code."

We are not persuaded. Cadena and Wise supply no authority for their contentions. Moreover, even a party seeking to remove a trustee by means of a petition under Probate Code section 15642 would be subject to the notice provisions of Probate Code section 17203, not Code of Civil Procedure sections 1003 through 1020. (See Prob. Code, §§ 17200, subd. (b)(10), 17203, 15642, subd. (a).) Probate Code section 15642, pursuant to which the court acted, clarifies that a probate court may remove a trustee without a

24.

petition. (See *Schwartz*, *supra*, 164 Cal.App.4th at p. 427 [a probate court has "the express power to remove a trustee on its own motion, *without a petition*"].)

In addition, Probate Code section 15642 does *not* require that the court file a *noticed* motion in order to exercise its discretion pursuant to that statute. On the contrary, Probate Code section 15642, subdivision (a) merely provides that "[a] trustee may be removed in accordance with the trust instrument, by the court on its own motion." (See *Harabedian v. Superior Court* (1961) 195 Cal.App.2d 26, 32 ["The two terms, 'motion' and 'notice of motion' are sometimes used interchangeably, although they are not actually identical. A *motion* is defined to be an application for an order. (Code Civ. Proc., § 1003.) A *motion* is made orally in court and written notice thereof need not be given unless required by statute."].) The express terms of Probate Code section 15642, subdivision (a) authorized the court to remove Cadena on its own *motion*. Even assuming the applicability of the Code of Civil Procedure here, a notice of motion in accordance with Code of Civil Procedure section 1010 was not required (a notice of motion must be in writing, and must state when, and the grounds upon which it will be made, and the papers, if any, on which it is to be based).

Finally, a probate court's authority to remove a trustee derives not only from Probate Code section 15642, but also from its broad equitable powers to supervise the administration of a trust. (See Prob. Code, § 17206; *Schwartz*, *supra*, 164 Cal.App.4th at p. 427.)

We conclude Cadena had adequate notice.

(ii)     Cadena's Due Process Rights Were Not Violated

Cadena and Wise further contend that the manner in which the court proceeded in removing Cadena as trustee of the trust violated her rights to due process under the constitutions of the United States and California. We disagree.

25.

"The touchstone of due process is fundamental fairness." (*Salas v. Cortez* (1979) 24 Cal.3d 22, 27.) "The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner." (*Ryan v. California Interscholastic Federation—San Diego Section* (2001) 94 Cal.App.4th 1048, 1072.) Due process, " ' "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." ' " (*Barclay Hollander Corp. v. California Regional Water Quality Control Bd.* (2019) 38 Cal.App.5th 479, 510.) It is a flexible concept that " ' "calls for such procedural protections as the particular situation demands." ' " (*Ibid*.) A due process analysis "adopts a more nuanced and pragmatic approach," whereas " '[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified.' " (*Noel v. Thrifty Payless, Inc*. (2019) 7 Cal.5th 955, 981.) Given the requisite flexible and pragmatic approach, "not every context to which the right to procedural due process applies requires the same procedure," nor does "every situation require[] a formal hearing accompanied by the full rights of confrontation and cross-examination." (*Ryan*, at p. 1072.)

Cadena's actual argument to the effect her due process rights were violated consists of one paragraph. Specifically, Cadena argues: "Cadena was on notice that the court was proposing to remove her under [Probate Code] section 15642, subdivision (a). But she was not told why or what evidence that [*sic*] she would need to rebut. This left it impossible for her to meet any contentions that would be supported under the removal provision of section 15642, subdivision (b). While due process is a 'flexible concept' it nevertheless guarantees to Cadena that she be given a fair opportunity to defend herself. Cadena believed herself to be the trustee. The court had even previously ordered her to file a trustee's accounting which she did. [Citation.] What happened instead was a sua sponte judgment on the pleadings on whether Andrew Negrete's trust instruments were

valid. The court's failure to give adequate notice violated Cadena's due process rights." Significantly, Cadena cites no authority showing she was denied due process under these circumstances.

A trustee is entitled to due process before he or she is removed from this position. (See *Schwartz*, *supra*, 164 Cal.App.4th at p. 429.) Generally, due process entails two fundamental elements: "notice and an opportunity to respond." (*Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1279.) However, as noted above, because due process is a flexible concept (*Mathews v. Eldridge* (1976) 424 U.S. 319, 334), the precise nature of the requisite notice and hearing depends on the particular circumstances of the case and a balancing of various factors. (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 150; *In re Earl L.* (2004) 121 Cal.App.4th 1050, 1053.)

Here, on January 4, 2022, the probate court denied an application filed by Lydia Vose to remove Cadena as trustee, on grounds the application did not comport with the notice provisions of Probate Code section 17203. At the same time, the probate court gave notice of its own motion to remove Cadena, setting a hearing on February 4, 2022, on the sua sponte motion. The court delineated the precise issues underlying its decision to move to remove Cadena as trustee and set a briefing schedule so the parties could fully brief those issues. The court expressly specified that the validity of Andrew's unilateral amendments was a central concern, given that Cadena had assumed the position of trustee of the entire trust on the basis of those amendments, in the first place.

Indeed, the validity of Andrew's unilateral amendments had already been litigated once before, in relation to Cadena's disinheritance petition and Vose's responsive anti-SLAPP motion. In ruling on Vose's anti-SLAPP motion, the probate court had determined that Andrew's amendments were void ab initio. (See *Vose I, supra*, F080428, F080183, F079863 at p. 30.) On review, we affirmed the probate court's ruling granting Vose's anti-SLAPP motion, without reaching the question of the validity of Andrew's

27.

unilateral amendments. (See *Vose I, supra*, at pp. 33-35.) On remand, the issue once again arose in the probate court, and the court again properly addressed it.

As for the court's concern, with respect to its own motion to remove Cadena as trustee, while the court did not expressly highlight the issue of preservation of the trust's estate in setting a hearing on its own motion, that issue had been in play in multiple proceedings in this protracted litigation. For example, the trial court earlier had issued an injunction to prevent further dissipation of the trust estate during the pendency of the litigation. Moreover, Cadena had supplied an accounting to the court (as she notes in her opening brief). In short, Cadena was fully aware of the court's concerns with regard to her management of the trust estate.

On February 4, 2022, the probate court held a hearing at which the parties had a full opportunity to address the issues in question. Both Cadena and Wise filed briefs ahead of the hearing and fully argued the merits of the issues under consideration by the court (Wise did not even complain about inadequate notice).[7] Importantly, the facts underlying the court's determination to remove Cadena as trustee are undisputed. In her briefs, Cadena has not identified any *material*, disputed facts, nor has she made any showing of prejudice. We conclude the probate court did not violate Cadena's due process rights in removing her as trustee of the trust.

---

[7] Vose and Castaneda persuasively argue that Cadena and Wise waived any notice defects with regard to the motion by opposing it on the merits. They cite *Tate v. Superior Court* (1975) 45 Cal.App.3d 925, 930 (*Tate*), among several other authorities. *Tate* states: "It is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of the motion. [Citations.] This rule applies even when no notice was given at all. [Citations.] Accordingly, a party who appears and contests a motion in the court below cannot object on appeal or by seeking extraordinary relief in the appellate court that he had no notice of the motion or that the notice was insufficient or defective." (*Ibid.*)

(iii)    The Probate Court's Removal Order was Supported by Evidence

Cadena and Wise next argue that the probate court's order was "unsupported by any evidence" because "[a]ll that the court had before it was the briefing that it had solicited from the parties." (Unnecessary capitalization omitted.)  Cadena and Wise further argue that " '[a] trial brief is not evidence, it is argument.' "  Cadena and Wise make additional disingenuous and unpersuasive arguments along these lines, eventually asserting that "[w]ith no evidence before the court the removal order cannot stand."  We reject these contentions.

First, the parties submitted multiple briefs to the court in response to the court's motion to remove Cadena as trustee, and attached declarations and exhibits to their briefs.  Specifically, Vose and Castaneda submitted 41 exhibits and four declarations to the court, along with their briefs.  These exhibits included, inter alia, all of the trust documents that were central to the probate court's analysis.  The court not only had before it all those exhibits and declarations, but also the records in the court file in the matter (which included our opinion in *Vose I*).  Furthermore, the facts underlying the court's determinations were essentially undisputed.

*Vose I* addressed some of the undisputed issues that were germane to the probate court's analysis in removing Cadena as trustee.  For example, *Vose I* clarified:  "The parties agree that following Ruth's death, during Andrew's tenure as sole trustee, Andrew did not administer the trust in accordance with the trust instrument.  During Andrew's tenure as sole trustee (2003 to 2017), he also made, between 2010 and 2017, five unilateral amendments to the trust.  The unilateral amendments, along with Andrew's failure to administer the trust as set forth in the original trust instrument, resulted in drastic changes to the distribution plan set forth in the original trust."  (See *Vose I, supra*, F080428, F080183, F079863 at p. 3.)  *Vose I* also clarified:  "Furthermore, in light of the trust terms and Cadena and Wise's concessions that Andrew failed to administer properly

the trust, and intended to amend improperly the trust as a whole (Ruth's wishes and instructions notwithstanding), Vose and Castaneda are likely to prevail on their claims [in their initiating petitions] to the extent the latter seek, at bottom, the proper interpretation, reformation, or administration of the trust." (See *Vose I,* at p. 37.) In addition, *Vose I* clarified: "Cadena distributed the real properties owned by the trust in accordance with the distribution plan effected by Andrew's unilateral amendments, that is, she distributed the real properties mainly to herself." (See *Vose I,* at p. 5.)

Cadena and Wise were well aware that the validity of Andrew's unilateral amendments was central to the question as to whether Cadena should be removed as trustee, as was the issue of her management of the trust estate. Had Cadena and Wise wanted to dispute the facts before the court or present additional facts, they were free to request an evidentiary hearing but chose not to do so. (See *Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 620 [" 'where the parties do not object to the use of affidavits in evidence, and where both parties adopt that means of supporting their positions, the parties cannot question the propriety of the procedure on appeal' "].)

> (iv) <u>Probate Court Properly Reached the Question of the Validity of Andrew's Unilateral Amendments</u>

Cadena and Wise contend: "The trial court's grounds for removal rest[] upon its declaration that Andrew's Sixth Amendment [distribution scheme favoring Cadena] and Seventh Amendment [appointing Cadena trustee] are void. [Citation.] The trial court's secondary ground for 'removal' was that Cadena had distributed trust property according to the void Sixth Amendment. This ground is really just a restatement of the first." Cadena and Wise further argue: "It would seem axiomatic that for Cadena to be removed as trustee she must be the trustee in the first place. Instead, the court is employing the sua sponte authority to remove a trustee as a means to reach the validity of the instrument under which Cadena was acting turning the removal authority under section 15642 into a form of declaratory relief on the validity of Andrew's amendments." Cadena and Wise

30.

add: "The trial court's sua sponte Removal Order is tantamount to a sua sponte summary judgment ordering declaratory relief." They conclude: "The order 'removing' Cadena upon declaration that Andrew's amendments were void must be reversed." In short, Cadena and Wise posit that while the probate court had the authority to remove Cadena as trustee, it was precluded from interpreting Andrew's unilateral amendments so as to find them void. We disagree.

The probate court has the "inherent power to decide all incidental issues necessary to carry out its express powers to supervise the administration of the trust." (*Estate of Heggstad*, *supra*, 16 Cal.App.4th at p. 951.) This inherent equitable power of the probate court has long been recognized to encompass the authority to "take remedial action." (*Schwartz*, *supra*, 164 Cal.App.4th at p. 427.) "Under California trust law, a court can intervene to prevent or rectify abuses of a trustee's powers." (*Edwards v. Edwards*, *supra*, 61 Cal.App.4th at p. 604.) This authority is codified in Probate Code section 17206, which allows a probate court to make "any orders" necessary or proper to dispose of the matters presented by a petition.

Here, the petitions pending before the probate court and related litigation had raised multiple red flags for the probate court with regard to Andrew's conduct in executing the unilateral amendments and Cadena's administration of the trust. Moreover, after the issuance of the preliminary injunction restricting further disbursement of the trust estate by Cadena, Cadena had filed a petition for settlement of first and final accounting and report of trustee on November 21, 2019 (this was stayed on January 28, 2020, during the pendency of the initial appeal in this matter; remittitur was issued on Sep. 27, 2021). These matters before the court triggered its duty to scrutinize the prudence of Cadena's administration of the trust and the validity of the trust provisions under which she was purporting to act. (*Schwartz*, *supra*, 164 Cal.App.4th at p. 428.)

31.

Given its broad powers to decide all incidental issues necessary to carry out its express authority to supervise the administration of the trust, and its express power to take any action necessary to dispose of matters presented by a petition, the probate court properly considered the question of the validity of Andrew's unilateral amendments. (*Schwartz*, *supra*, 164 Cal.App.4th at p. 429 [probate court has "extensive general express and inherent equity powers"]; *Estate of Ferber*, *supra*, 66 Cal.App.4th at p. 253 [probate court has the responsibility "to protect the estate and ensure its assets are properly protected for the beneficiaries"]; *Estate of Vokal* (1953) 121 Cal.App.2d 252, 258 [trustee is subject to removal whenever his or her private interests conflict with trust duties].) Indeed, as noted above, this was not the first time the probate court was called upon to decide the issue of the validity of Andrew's unilateral amendments.

We conclude the probate court could properly consider the issue of the validity of Andrew's unilateral amendments in determining whether to remove Cadena—on its own motion—pursuant to both its statutory and inherent authority.

Cadena and Wise make an additional convoluted and unpersuasive argument that Cadena cannot be removed as trustee to the extent the unilateral amendment appointing her trustee is declared void, because in that scenario she was never the trustee in the first instance. This argument is tautological and patently meritless. Cadena manifestly assumed the office of trustee of the trust and has maintained throughout the pendency of this matter that she is the trustee of the trust.

### (v) Probate Court Correctly Determined that Andrew's Unilateral Amendments Were Void

Cadena and Wise assert: "[T]he trial court has now twice declared the trust instruments to be void. And the validity of the instruments turns on a question of law that will dictate the outcome of further proceedings below.… Accordingly, appellants ask that [this] court reach this issue." The fact that Cadena and Wise deem it proper for this court to reach the issue of the validity of Andrew's unilateral amendments at this juncture

32.

begs the question why they have challenged on appeal the probate court's ability to do so, in the first instance. Moreover, the fact that they deem the issue to turn on a question of law and to be appropriate for us to address, undercuts somewhat their contention on appeal that the probate court's ruling must be reversed in light of the dearth of evidence supporting it.

Cadena and Wise argue: "Andrew's third through seventh amendments are valid instruments whether or not they effectively dispose of Ruth's property as Andrew held the power to amend as to his interest in the trust estate." (Unnecessary capitalization omitted.) We are not persuaded.

### (a)     *Probate Code Sections 15401 and 15402*

The Probate Code governs modification and revocation of a trust. Probate Code section 15401, subdivision (a) sets forth two alternative methods for revocation of a *revocable trust*. Under the first method, a revocable trust may be revoked by "compliance with any method of revocation provided in the trust instrument." (Prob. Code, § 15401, subd. (a)(1).) Under the second method (statutory method), a revocable trust may be revoked in "a writing, other than a will, signed by the settlor … and delivered to the trustee during the lifetime of the settlor." (*Id*. at subd. (a)(2).) The statute states, however, that if "the trust instrument explicitly makes the method of revocation provided in the trust instrument the exclusive method of revocation," that method must be used. (*Ibid*; *Diaz v. Zuniga* (2023) 91 Cal.App.5th 916, 921 (*Diaz*), overruled on other grounds by *Haggerty, supra,* 15 Cal.5th at p. 735. "For the trust revocation terms to override the statutory revocation provisions, the trust must contain 'an explicit statement that the trust's revocation method is exclusive.' " (*Diaz* at p. 921.) Probate Code section 15401, subdivision (a)(2) accordingly " ' "provides a default [statutory] method of revocation where the trust is silent on revocation or does not explicitly provide the exclusive method." ' " (*Diaz* at p. 922.)

Probate Code section 15402 governs modification of a trust. That statute states: "Unless the trust instrument provides otherwise, if a trust is revocable by the settlor, the settlor may modify the trust by the procedure for revocation." (Prob. Code, § 15402.) Under Probate Code section 15402, when " 'the trust instrument is silent on modification, the trust may be modified in the same manner in which it could be revoked, either statutorily or as provided in the trust instrument.' " (*Diaz*, *supra*, 91 Cal.App.5th at p. 922.) As our Supreme Court just recently explained, this also holds true when, as here, the trust instrument specifies how the trust may be modified but does not state that the specified modification method is *exclusive*. (*Haggerty*, *supra*, 15 Cal.5th at p. 736 ["a trust instrument that merely specifies a method of modification without limiting settlors to the use of that method does not preclude the use of the revocation procedures and therefore does not 'provide[] otherwise' from the general rule"].) In other words, for the trust modification terms to override Probate Code section 15402, the trust must explicitly limit the settlors to the modification procedure specified in the trust. (*Ibid.*)

### (b) Andrew Improperly Amended the Trust as a Whole

Here, it cannot reasonably be disputed that Andrew intended to and did amend the entire trust by executing his unilateral amendments. In doing so Andrew ignored the trust language that required the creation of the specified sub-trusts upon Ruth's death (he never segregated the trust's assets to form the sub-trusts or undertook appropriate accounting measures to fund the sub-trusts). Andrew was also advised by the family's trust attorney, Larry Cox (who drafted both the original trust and all the amendments), that his unilateral amendments applied to the trust as a whole in contravention of the language of the original trust. In addition, it is clear that Andrew's unilateral amendments applied to the trust as a whole given that Cadena assumed the position of trustee of the entire trust under the amendments and distributed almost the entirety of the trust estate to herself under the amendments.

The trust, however, specified express and exclusive methods for revoking and amending the trust as whole, in Article IX, paragraphs (A) and (C) respectively. Article IX, paragraphs (A)[8] and (C)[9] specify that the trust as whole could only be revoked or amended while both settlors were alive (that is, during the "joint lifetimes" of the settlors), by means of a signed writing delivered to the trustees. In addition, Article IX, paragraph (B) specifies: "Revocation and amendment *shall be made* in the manner provided in paragraphs A and C of this Article IX." (Italics added.) As for the alternative, statutory revocation and modification procedures specified in Probate Code sections 15401 and 15402, under these methods revocation or amendment of *the trust as a whole* could similarly only occur *during the lifetimes of both settlors*, by means of a signed writing delivered to the trustees, *because the residual trusts, and by extension the trust as whole, became irrevocable upon Ruth's death*. (See Trust, Article IX (B).) In short, Andrew was precluded from revoking or modifying the trust as a whole after Ruth's death, under the modification and revocation procedures specified in the trust as well as the statutory methods of modification and revocation. Accordingly, Andrew's unilateral amendments were void ab initio.

Cadena and Wise argue that because Andrew could have chosen to amend merely the survivor's sub-trust, his unilateral amendments should posthumously be applied to the

---

[8] With regard to revocation of the trust as a whole, Article IX, paragraph (A) provides, in pertinent part: "During the joint lifetimes of the Settlors, this trust may be revoked in whole or in part with respect to community property by an instrument in writing signed by either Settlor and delivered to the Trustees and the other Settlor, and with respect to separate property by an instrument in writing signed by the Settlor who contributed that property to the trust, delivered to the Trustees."

[9] As to amendment of the trust as a whole, Article IX, paragraph (C) specifies, in pertinent part: "The Settlors may at any time during their joint lifetimes amend any of the terms of this instrument by an instrument in writing signed by both Settlors and delivered to the Trustees." (Trust, Article IX (C).)

survivor's sub-trust.[10] This argument is unavailing for myriad reasons, not least of which is the fact that Andrew had no intention of creating, funding, or amending the survivor's trust and, therefore, any attempts to conform his amendments to a nonexistent survivor's trust would not comport with his intentions as to the scope of his unilateral amendments. (See *Betts v. City National Bank* (2007) 156 Cal.App.4th 222, 232 [" ' "In construing a trust instrument, the intent of the trustor prevails." ' "].) Andrew went so far as to attempt to insulate his improper amendments from challenge by including no contest clauses to protect them. He chose not to create and amend a survivor's sub-trust, although he clearly had the power to amend such a sub-trust. Moreover, Article VII of the trust requires merging and commingling of the sub-trusts upon the death of the surviving spouse. Article VII remains in force in its original form. Accordingly, creation of a survivor's sub-trust at this juncture is precluded. In addition, in light of the lack of appropriate accounting since Ruth's death in 2003 and the disposition of much of the trust's estate by Cadena, it appears far from clear whether generating sub-trusts at this point, even in purely monetary terms, is even a practicable proposition.

## DISPOSITION

The judgment is affirmed. Vose and Castaneda are awarded their costs on appeal.

SMITH, J.

WE CONCUR:

FRANSON, Acting P. J.

SNAUFFER, J.

---

[10] Article IX, paragraph (B) provides: "On the death of the Deceased Spouse, the Surviving Spouse shall have the power to amend, revoke, or terminate the Survivor's Trust but the Residual Trust may not be amended, revoked or terminated."